IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3489

THERESA WERNIMONT,

    Plaintiff,

v.

COLORADO STATE UNIVERSITY, through its BOARD OF GOVERNORS OF THE COLORADO STATE UNIVERSITY SYSTEM, a body corporate,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Theresa Wernimont for her Complaint states:

### INTRODUCTION

1. This is an employment discrimination and retaliation suit brought by a female non-tenure track faculty member employed by Defendant Colorado State University who has taught in CSU's College of Business, Department of Management, at the Fort Collins campus from 2007 to the present.

2. Plaintiff brings claims of sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), as well as a

claim of sex-based pay discrimination pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) ("EPA").

## PARTIES

3. Plaintiff Theresa Wernimont is a resident of the State of Colorado.

4. Defendant Board of Governors of the Colorado State University System ("CSU") is a state-sponsored institution of higher education organized under Article VIII, Section 5 of the Colorado Constitution and Title 23, Article 30 of the Colorado Revised Statutes, C.R.S. § 23-30-101, *et seq*.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and specifically under Title VII, as amended, 42 U.S.C. § 2000e *et seq.*, and the EPA, 29 U.S.C. § 206(d).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the employment practices alleged to be unlawful were committed in the District of Colorado.

7. At all relevant times, Defendant CSU was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII and 29 U.S.C. § 203(d) of the Fair Labor Standards Act, of which the EPA is a part.

## SPECIFIC ALLEGATIONS

8. Plaintiff is a female.

9. Plaintiff has been employed by Colorado State University ("CSU") from 2007 to the present.

10.     Plaintiff received her Bachelor of Science in Business Administration and her Master of Business Administration from CSU.  In addition, Ms. Wernimont has extensive work experience and a background as an entrepreneur.

11.     Plaintiff is currently a non-tenure track faculty member within the College of Business at CSU Fort Collins.

12.     The College of Business ("COB") is one of eight colleges within CSU and is comprised of five academic departments: Accounting; Computer Information Systems; Finance & Real Estate; Management; and Marketing.

13.     The COB hires non-tenure track faculty to teach many of its undergraduate and introductory courses.  The COB frequently hires individuals for non-tenure track positions who have extensive experience in business.

14.     As of 2019, non-tenure track faculty at CSU are classified as Adjunct faculty, with Temporary Appointments or Special Appointments (either Contract or Continuing Appointments). At the University level, such non-tenure track faculty ranks are referred to as Instructors, Senior Instructors and Master Instructors.

15.     Within the COB, non-tenure track faculty are given their own titles: Instructors are referred to as Instructors; Senior Instructors are referred to as Senior Lecturers; and Master Instructors are referred to as Master Lecturers or Clinical Professors (if they have a PhD).

16.     Ms. Wernimont currently has a Continuous Appointment as a Senior  Instructor at CSU and holds a COB title of Senior Lecturer in the Department of Management.  She teaches undergraduate classes in business writing (BUS 300 – Business Writing and Communication) which is a required course in the undergraduate business curriculum.

17.     Ms. Wernimont is currently being paid $58,132 for the 2020-2021 school year. She is the lowest paid full-time faculty member in the COB.

18.     Even though the COB policies state that it sets salary for COB faculty based on a comparison of salaries for business school faculty at peer institutions, COB has not set the salary for Ms. Wernimont and her fellow non-tenured faculty members who teach BUS 300 according to such salary bench marks.

19.     Ms. Wernimont has repeatedly raised her concerns of unequal pay with multiple CSU administrators about how female non-tenure track faculty have been treated less favorably in the COB, especially in comparison to male non-tenure track faculty in the COB.

20.     Ms. Wernimont has been repeatedly retaliated against for having raised her concerns regarding sex discrimination at the COB.  She has been retaliated against in a variety of ways, including, but not limited to: being denied pay raises; being paid less for the courses taught; being paid less for course coordination duties; being denied promotions; being denied the opportunity to teach upper level classes; being given lower performance ratings on her performance reviews; and having her full-time status changed to part-time status.

21.     From 2013 to 2019, Ms. Wernimont has been repeatedly denied the opportunity for promotion to the next level in the career track for non-tenured faculty members. As there was no formal process to apply for promotion for non-tenure track faculty members, Ms. Wernimont had to informally ask her department chairs to promote her to the next level.

22.      This informal promotion practice has resulted in the non-tenured faculty career track consisting of instructor, lecturer, and clinical professor being inconsistently applied during Ms. Wernimont's employment from 2007 to 2019.

23.     For example, male non-tenured faculty in the COB, including Burt Deines, Bill Shuster, and Paul Vanderspek, who have comparable educational and work backgrounds to Ms. Wernimont, were promoted to clinical professors and paid much higher salaries.

24.     Even though non-tenure track faculty members Burt Deines, Bill Shuster and Paul Vanderspek have since had the title of Clinical Professor taken away because they did not have a PhD, they have been given the title of Master Lecturer and have not had their salaries reduced.

25.     Ms. Wernimont was repeatedly denied the opportunity to be promoted from "Instructor" to "Lecturer," with 90% teaching and 10% service, even though she had been teaching since 2007 and performing the duties of Course Coordinator (considered service for all other full-time faculty) from 2013 to 2019.

26.     Ms. Wernimont was also discriminated against because of her sex with respect to teaching assignments. For example, male non-tenured faculty members in the COB have received more favorable teaching assignments, i.e., they are assigned to teach upper division courses that garner higher teaching evaluations.

27.     In contrast, Plaintiff and other female non-tenured faculty members are assigned to teach undergraduate lower level courses such as BUS 300 and for which they are evaluated more critically by students.

28.     Ms. Wernimont has requested to teach higher level management courses throughout her tenure. However, she has been repeatedly denied the opportunity to teach other management courses even though she possesses a broad background as an entrepreneur and significant experience as an instructional coordinator/faculty in eight online MBA courses.

29.     For example, when Management Department faculty suggested that Ms. Wernimont

teach MGT 320, 305 or 476, the Department Chair Lynn Shore declined to offer her these opportunities and hired a male faculty member to teach such classes.

30.     In 2013, Ms. Wernimont started raising her concerns about the disparate treatment of female non-tenure track faculty to the administration at CSU. She was specifically concerned with how female non-tenure track faculty members were treated in comparison to male non-tenure track faculty members in the College of Business, especially with respect to pay and compensation and other terms and conditions of employment.

31.     In the spring of 2013, Dr. Dan Ganster, the COB Department Chair at that time, asked Ms. Wernimont to take a leadership role in coordinating the BUS 300 classes as the prior male faculty member, Dr. Gould, who handled the course coordination was retiring.  Dr. Ganster agreed to pay her the same as Dr. Gould.

32.     Ms. Wernimont agreed to assume the additional leadership responsibilities for BUS 300 provided that she was paid $52,000 for the year or $6,500 per class per semester for four courses and the additional course coordinator duties. This was the same amount that was paid to Dr. Gould.

33.     On July 13, 2013, there was a change in leadership within the COB and Dr. Lynn Shore became the new Management Department Chair.

34.     In August 2013, just a week before fall 2013 classes were scheduled to start, Dr. Shore provided Ms. Wernimont with an offer letter and listed her base salary at $18,000 per semester which is only $4,500 per class for four classes each semester. In addition, she was not given any additional compensation for the course coordinator duties.

35.     Ms. Wernimont protested her pay and advised Dr. Shore that Dr. Ganster had promised to

pay her $6,500 per class per semester which is what her male predecessor had been paid for such duties.

36. Dr. Shore refused to increase Ms. Wernimont's pay.

37. Dr. Shore refused to provide an increase in Ms. Wernimont's compensation until she was required to increase Ms. Wernimont's pay to $5,000 per class as that was the new minimum set by the administration for all non-tenured faculty teaching classes at CSU.

38. Simultaneously, Ms. Wernimont questioned Dr. Shore's decision to promote a male non-tenure track faculty member named Burt Deines from Instructor on a Temporary Appointment to Special Appointment with a contract, title of Clinical Professor and salary of $72,000 per school year.

39. Mr. Deines and Ms. Wernimont have worked for CSU as non-tenure track faculty members for comparable amounts of time and have similar educational backgrounds as neither have a terminal degree such as a Ph.D.

40. Ms. Wernimont also raised the pay discrimination issue with the Dean of COB, Dr. Beth Walker, in the fall of 2015.

41. Dean Walker took no action to remedy Ms. Wernimont's concerns about the pay inequities being experienced by female non-tenure track faculty in the COB.

42. In June 2016, Ms. Wernimont expressed her concerns again to Dr. Shore regarding the inequities in her compensation.

43. Dr. Shore retaliated against Ms. Wernimont by arbitrarily lowering the amount she would be paid for courses from $6,000 per class in the spring of 2016 to $5,000 per class for the summer of 2016.

44.     Simultaneously, in of June 2016, Ms. Wernimont's status was due to be converted from a "Temporary Appointment" to a "Special Appointment" to comply with CSU's Faculty Manual regarding classification of non-tenure track faculty.

45.     At that time, Ms. Wernimont questioned Dr. Shore about why Dr. Shore was denying her a raise and promotion in addition to changing her appointment from temporary to special. Ms. Wernimont again questioned why she was being treated less favorably than comparable male faculty, such as Burt Deines, who earned approximately $77,000 in base salary for the 2016-2017 school year. In contrast, Ms. Wernimont was paid $48,000 in base salary for the 2016-2017 school year.

46.     On June 29, 2016, Ms. Wernimont met with Dean Walker and raised her concerns regarding the continuing inequities in pay and promotions. Ms. Wernimont provided Dean Walker with evidence of the disparity in pay between Mr. Deines and Ms. Wernimont.

47.     Dean Walker did not nothing to remedy Ms. Wernimont's concerns.

48.     In fall 2017, Ms. Wernimont raised the issue of inequities in pay with Human Resources Manager Chelsey Lane.

49.     Human Resources Manager Chelsey Lane did nothing to remedy Ms. Wernimont's concerns.

50.     In December 2017, Ms. Wernimont communicated with the Associate Dean of the COB, Dr. Ken Manning, and raised her concerns regarding inequity in pay, including the failure to properly compensate her for taking over classes for an instructor who had been deployed by FEMA, as well as her continuing failure to be compensated for course coordination.

51.     Associate Dean Ken Manning did not address the overall concerns regarding pay and

promotion issues but did address Ms. Wernimont's concerns regarding the pay for taking on additional classes for the instructor who had been deployed and acknowledged the pay issue for course coordination.

52. In April 2018, Dr. Shore gave Ms. Wernimont her annual performance evaluation for 2017 and rated her as "meets expectations" even though the department's review committee had rated Ms. Wernimont as "exceeds expectations."

53. Dr. Shore refused to change the rating on the performance evaluation even though she had never even observed Ms. Wernimont teaching any of her classes.

54. Dr. Shore also kept a secret file of alleged student complaints about Ms. Wernimont and never bothered to discuss any of them with Ms. Wernimont.

55. Even though the University had adopted some new guidelines for the employment of non-tenure track faculty members in the spring of 2018, Dr. Shore refused to promote Ms. Wernimont.

56. Dr. Shore further retaliated against Ms. Wernimont by moving her office to a much less desirable location in the Management department; failing to keep Ms. Wernimont informed of important work-related information; excluding her from committee meetings; and manipulating student comments and evaluations.

57. Dr. Shore's final act of retaliation before the end of her tenure as Management Department Chair on June 30, 2018, was to send an employment letter dated June 25, 2018 to Ms. Wernimont changing her status from full-time instructor to part-time instructor for the 2018-2019 school year.

58. Dr. Shore claimed that she had to change Ms. Wernimont's status from full-time to part-

time because there was going to be a reduction in the number of writing classes taught at the COB.

59. Ms. Wernimont protested this change in status from full-time to part-time.

60. Ms. Wernimont researched Dr. Shore's assertion that there was going to be reduction in the number of classes at the COB. Ms. Wernimont was able to verify through CSU's Undergraduate Advising that the same number of BUS 300 course sections as historically has been offered would be offered in the 2018-2019 school year.

61. On July 1, 2018, there was a change in leadership in the Management Department at COB and Dr. Travis Maynard became the new Department Chair. Dr. Lynn Shore returned to the faculty.

62. The new Management Department Chair, Dr. Maynard, was required to revise the employment letter and offer Ms. Wernimont a full-time position for the 2018-2019 school year. However, Dr. Maynard advised Ms. Wernimont that he was only going to offer her a contract for the fall semester of the 2018-2019 school year.

63. On July 26, 2018, Ms. Wernimont and her fellow female non-tenured faculty member, Dr. Jenny Morse, who also taught BUS 300, met with the new Management Department Chair Travis Maynard and raised their concerns regarding sex discrimination and the retaliation that they had experienced.

64. In the meeting on July 26, 2018, Dr. Maynard suggested for the first time that their pay was not comparable to other business school faculty but was more in line with the compensation for liberal arts faculty who taught writing courses.

65. On August 6, 2018, Ms. Wernimont met with Dr. Maynard again and specifically raised

the disparity in pay and promotions, especially between her and Burt Deines, the male non-tenured faculty member who had been promoted and given substantial pay increases.

66. Ms. Wernimont also pointed out that the COB policies state that it sets salaries for COB faculty based on a comparison of salaries for business school faculty at peer institutions and that comparing the BUS 300 writing course to the English Department writing courses was inappropriate. Moreover, Ms. Wernimont provided evidence that other business schools at peer institutions had business school faculty who taught business communication courses as well.

67. On September 18, 2018, Ms. Wernimont and Dr. Jenny Morse met with Vice Provost Dan Bush and raised their concerns regarding sex discrimination against female non-tenure track faculty members in the COB.

68. At that meeting, Ms. Wernimont gave Vice Provost Bush a spreadsheet reflecting the disparity in pay between male and female non-tenure track faculty members in the COB. She noted that she and Dr. Morse were among the lowest paid of the full-time non-tenure track faculty members in the COB.

69. Vice Provost Bush took no action to remedy Ms. Wernimont and Dr. Morse's concerns.

70. In the summer and fall of 2018, Ms. Wernimont communicated with University Grievance Officer Richard Eykholt about the continuing mistreatment that she was experiencing at COB, including Dr. Shore's efforts to reduce her from full-time to part-time status and Dr. Maynard's decision to offer Ms. Wernimont a contract for the 2018 fall semester only.

71. Dr. Eykholt was able to convince Dr. Maynard to offer a full teaching load to Ms. Wernimont for the 2018-2019 school year

72. In the fall of 2018, Ms. Wernimont continued to seek remedies for the University's

failure to compensate her properly for the course coordination duties that she had performed for years.

73.     On January 10, 2019, Dr. Travis advised Ms. Wernimont that he was only going to pay her $750 for her course coordinator duties.

74.     On January 14, 2019, Ms. Wernimont sent an email to Dr. Maynard questioning the amount of supplemental pay that CSU was proposing to pay her for course coordination. At that time, Ms. Wernimont provided information regarding the higher compensation being paid to male full-time instructors who had course coordinator duties.

75.     Ms. Wernimont again attempted to raise her concerns regarding the systemic sex discrimination against female non-tenure track faculty within the COB with the University Grievance Officer Richard Eykholt and asked about filing a grievance to address the inequities in pay through CSU's faculty grievance procedures.

76.     Dr. Eykholt told Ms. Wernimont that he would not assist her in filing a grievance regarding the inequities in pay at COB experienced by female non-tenure track faculty as he did not consider it politically appropriate to address those concerns in that forum.

77.     Having raised her concerns regarding sex discrimination with multiple administrators with no resolution and having been retaliated against for having raised such concerns, Ms. Wernimont made the decision to file a charge of discrimination with the Equal Employment Opportunity Commission.

78.     On January 29, 2019, Plaintiff filed her charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

79. On February 14, 2019, Dr. Travis Maynard was informed that Ms. Wernimont had filed a charge of sex discrimination with the EEOC.

80. On February 27, 2019, Dr. Maynard conducted Ms. Wernimont's performance evaluation for 2018. Dr. Maynard rated her as "below expectations," even though he had never even observed Ms. Wernimont teaching any of her classes. Moreover, he had continued his predecessor Dr. Shore's practice of keeping a secret file of alleged student complaints including the ones compiled by his predecessor Dr. Shore.

81. Per University policy, Ms. Wernimont filed a grievance regarding the performance evaluation with the University's Grievance Officer Richard Eykholt and requested a hearing before a University Grievance Committee.

82. The University Grievance Committee held a hearing and issued written findings in support of Ms. Wernimont. The University Grievance Committee found that Dr. Maynard had conducted his review in an unfair and unreasonable manner and that Ms. Wernimont's performance exceeded expectations.

83. Ultimately, the University Grievance Committee's decision was upheld by Provost Rick Miranda and President Tony Frank.

84. Despite the favorable finding in Ms. Wernimont's favor, the change in her performance evaluation did not result in a change in her compensation or her job title.

85. Ms. Wernimont continues to be paid substantially less than the full-time male non-tenure track faculty members in the COB.

86. In spring 2019, the COB further redefined the classifications of non-tenure track faculty.

87. The 2019 non-tenure track faculty framework provides that non-tenure track faculty will

be classified as either Instructor, Senior Instructor, or Master Instructor, depending on an instructor's years of service.

88. Ms. Wernimont was classified as a Senior Instructor with four years credit toward the rank of Master Instructor based on the new classifications. However, she was not given any increase in compensation.

89. The University and the COB made no effort to address the disparity in pay between non-tenured faculty members within the new non-tenure track faculty framework.

90. For the 2019-2020 school year, Ms. Wernimont earned $58,132 for her base salary.

91. She did not receive a raise in her base salary for the 2020-2021 school year and continues to be paid $58,132.

92. In contrast, the average male full-time non-tenure track faculty member at the Senior Instructor level in the COB has been paid approximately $92,000 each year from 2019 to the present.

93. The EEOC issued a Notice of Right to Sue for Plaintiff's charge of discrimination on September 1, 2020.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

(Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

94. The foregoing allegations are realleged and incorporated herein by reference.

95. CSU subjected Plaintiff to less favorable terms and conditions of her employment based on sex as described in this Complaint, including but not limited to: paying Plaintiff less than her

male peers; denying advancement opportunities, promotions and raises to Plaintiff; denying Plaintiff the opportunity to teach upper level classes; denying Plaintiff resources; and providing Plaintiff with negative performance evaluations.

96. CSU's conduct discriminated against Plaintiff based on her sex in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

97. As a direct and proximate result of CSU's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF

(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended)

98. The foregoing allegations are realleged and incorporated herein by reference.

99. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under Title VII, including discrimination based on sex.

100. As a result of Plaintiff's protected opposition to discrimination, CSU retaliated against her by subjecting her to the different terms and conditions of employment as described in this Complaint, including, but not limited to: failing to provide increases in compensation; denying advancement opportunities, promotions and raises to Plaintiff; decreasing the compensation paid to Plaintiff; denying Plaintiff the opportunity to teach upper level classes; denying Plaintiff resources; and providing Plaintiff with negative performance evaluations.

101. CSU's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

102. As a direct and proximate result of CSU's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF

(Sex-Based Wage Discrimination in violation of the Equal Pay Act of 1963, as amended)

103. The foregoing allegations are realleged and incorporated herein by reference.

104. During her employment with CSU as a non-tenured faculty member, Plaintiff was performing work that was substantially equal to one or more male non-tenured faculty members considering the skills, duties, supervision, effort, and responsibilities of that role.

105. The conditions where the work was performed by Plaintiff and one or more male non-tenured faculty members was basically the same.

106. One or more male non-tenured faculty members was paid more than Plaintiff under such circumstances.

107. CSU either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

108. As a direct and proximate result of CSU's actions, Plaintiff has suffered damages, including lost wages and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Wernimont respectfully requests that this Court enter judgment in her favor and against Defendant CSU and order the following relief as allowed by

law:

    A.    Back pay and benefits;

    B.    Promotion to a higher non-tenure track faculty position with commensurate pay and benefits;

    C.    Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

    D.    Liquidated damages;

    E.    Injunctive and/or declaratory relief;

    F.    Attorney fees and costs of the action, including expert witness fees, as appropriate;

    G.    Pre-judgment and post-judgment interest at the highest lawful rate; and

    H.    Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted November 25, 2020.


    By:    SWEENEY & BECHTOLD, LLC

    s/Madeline A. Collison
    650 S. Cherry St., Ste. 700
    Denver, Colorado 80246
    Telephone: (303) 865-3733
    Fax: (303) 865-3738
    E-mail: macollison@sweeneybechtold.com

    ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
824 Warren Landing
Fort Collins, CO 80525

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.


By:	SWEENEY & BECHTOLD, LLC

s/Madeline A. Collison
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: macollison@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF